**AKERMAN LLP**
KAREN P. CICCONE (SBN 143432)
Email: karen.ciccone@akerman.com
725 South Figueroa Street, 38th Floor
Los Angeles, California 90017-5433
Telephone: (213) 688-9500
Facsimile: (213) 627-6342

Attorneys for Defendants
JOSEPH CHARLES LEMIRE,
an individual, and
OLYMPIC CHAMPIONS LTD.,
a Delaware corporation



**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| OKSANA BAIUL-FARINA, professionally known as OKSANA BAIUL, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>JOSEPH CHARLES LEMIRE, an individual; OLYMPIC CHAMPIONS LTD., a Delaware corporation; OLYMPIC CHAMPIONS LTD., a British Virgin Islands corporation; REPUBLIC OF UKRAINE, a sovereign nation; DOES 1-10,<br><br>Defendants. | Case No. 2:15-cv-7325<br><br>**NOTICE OF REMOVAL** |

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, defendants Joseph Charles Lemire, an Individual ("Lemire") and Olympic Champions Ltd., a Delaware corporation ("OCL-Delaware"), by and through their undersigned counsel, hereby file this notice of removal of this civil action from the Superior Court of the State of California, Los Angeles County, to the District Court of the Central District of California. Lemire and OCL Delaware appear for the purpose of removal

///

only and for no other purpose, reserve all rights and defenses available to them, and state as follows:

1. On or about July 10, 2015, plaintiff Oksana Baiul-Farina, professionally known as Oksana Baiul ("Baiul"), filed a complaint (the "Complaint") in the Superior Court of the State of California, Los Angeles County, entitled *Baiul v. Joseph Charles Lemire et al.* (the "Action"). A copy of the Complaint in the Action (including its exhibits) is attached hereto as Exhibit A.

2. Baiul won the gold medal for figure skating at the 1994 Winter Olympics.

3. In the Complaint, Baiul alleges, in substance, that defendants cheated her in various ways by stealing or diverting money, to defendants or others, that Baiul supposedly earned or to which she was supposedly entitled for her ice skating performances, theatrical performances or endorsements. Baiul alleges compensatory damages of "not less than $20,000,000" and seeks punitive damages of "not less than $30,000,000."

4. The Action concerns the same claims and arises out of the same underlying facts as in another action commenced by Baiul, entitled *Oksana Baiul v. William Morris Agency, LLC, et al.*, 13-cv-8683 (KBF) (the "New York Action"). In the New York Action, Baiul sued multiple defendants, including Lemire and OCL-Delaware, alleging RICO and other claims, and sought (among other relief) damages "in a sum not less than $78,570,000" (plus interest, treble damages and attorneys' fees). The District Court dismissed the New York Action as to all defendants as time-barred (describing the claims as "frivolous and, frankly, bizarre"); the Court of Appeals for the Second Circuit affirmed the dismissal and denied Baiul's petition for panel rehearing; the District Court denied Baiul's motion to re-open the case based on allegedly newly-discovered evidence; Baiul appealed that dismissal to the Second Circuit and subsequently moved to dismiss her own appeal (the motion to dismiss the appeal is pending).

/ / /

AKERMAN LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

AKERMAN LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

**The Amount in Controversy Requirement is Satisfied**

5. As the Complaint claims compensatory damages of not less than $20 million, the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, as required by 28 U.S.C. § 1332(a).

**There is Complete Diversity of Citizenship**

6. This Action is between citizens of a State and citizens or subjects of a foreign state under 28 U.S.C. § 1332(a)(2), as set forth below.

7. The plaintiff, Baiul, alleges that she is a "citizen of and domiciled in Ukraine" and "is currently a resident of Las Vegas, Nevada"(Complaint ¶ 7).

8. As to defendant Lemire, Baiul (a) correctly alleges that he is a citizen of the United States, but (b) incorrectly alleges that he "is domiciled in Ukraine" (Complaint ¶ 10). Lemire is domiciled in and is a citizen of the State of Louisiana.

9. As to defendant OCL-Delaware, Baiul (a) correctly alleges that it is a Delaware corporation, and (b) alleges that its principal place of business is in New York, New York (Complaint ¶ 9).

10. As to defendant Olympic Champions Ltd., a British Virgin Islands corporation ("OCL-BVI"), Baiul (a) correctly alleges that it "*was* a British Virgin Islands corporation" (Complaint ¶ 8) (emphasis added), and (b) alleges that its principal place of business was in the British Virgin Islands (*id.*). OCL-BVI was dissolved and stricken from the British Virgin Islands registry of corporations on November 2, 2010; it had been inactive for at least several years before 2010; and it has had no insurance or other assets since at least several years before 2010. OCL-BVI therefore has nothing at stake or any material interest in the outcome of this Action. Accordingly, it is a nominal party that is disregarded for purposes of diversity jurisdiction under 28 U.S.C. § 1332(a).

11. In addition, to our knowledge OCL-BVI has not been served with the summons and Complaint in this Action.

/ / /

12. As to defendant Republic of Ukraine ("Ukraine"), Baiul correctly alleges that it is a sovereign nation (Complaint ¶ 11). However, it is disregarded for purposes of diversity jurisdiction under 28 U.S.C. § 1332(a) for two reasons: (a) the Complaint does not allege any specific claim by Baiul against Ukraine; it merely alleges that Ukraine paid a $12 million arbitration award supposedly on account of Baiul (Complaint ¶ 4 and its Exhibits B and C) and lumps Ukraine together with "all defendants" in the First Cause of Action, for breach of contract (*id.* ¶¶ 17-19) (even though Baiul alleges no contract between her and Ukraine), the Fourth Cause of Action for unjust enrichment by fraud and mistake (*id.* ¶¶ 29-31) (even though Baiul does not allege how Ukraine supposedly was unjustly enriched), and the Fifth Cause of Action for an "accounting" (*id.* ¶¶ 32-33) (even though an accounting is not a claim, but rather a remedy, and Baiul does not allege for what reason Ukraine should "account" to her); thus Ukraine is a nominal party and was fraudulently joined; and (b) Ukraine was not properly served with the summons and Complaint in this Action.

13. Accordingly, disregarding the two nominal and/or fraudulently joined defendants – OCL-BVI and Ukraine, whom Baiul evidently named for the strategic purpose of avoiding federal court jurisdiction – there is complete diversity of citizenship between the parties having a real interest in the controversy involved in this Action, in that: (a) the plaintiff, Baiul, is a citizen of a foreign country (Ukraine) who resides in Nevada, and (b) the defendants are citizens of Louisiana (Lemire), Delaware (OCL-Delaware), and (as alleged in the Complaint) New York (OCL-Delaware).

14. Additionally, the rule requiring the consent to removal by all the defendants, also known as "the 'rule of unanimity[,]' does not apply to 'nominal, unknown or fraudulently joined parties.'" *United Computer Systems, Inc. v. AT & T Corp.*, 298 F.3d 756, 762 (9th Cir. 2002). Because OCL-BVI and Ukraine are nominal and/or fraudulently joined parties (and in addition, because neither of those parties has been served, or properly served, with the summons and complaint), their consent is not required and all remaining defendants join in this removal petition.

AKERMAN LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

**The Other Requirements for Removal Are Met**

15. This notice of removal is filed within the 30-day period set forth in 28 U.S.C. § 1446(b). Baiul's counsel e-mailed a copy of the Complaint (without a summons) to Martin Domb, an attorney for Lemire and OCL-Delaware, on August 31, 2015. Assuming this e-mail qualifies as "receipt by the defendant through service or otherwise" under 28 U.S.C. § 1446(b), then the 30th day after such e-mail receipt is September 30, 2015.

16. Also attached to the August 31, 2015 e-mail from Baiul's counsel was a copy of a proof of service of the summons and Complaint on Lemire by the "leave and mail" method, under California Code of Civil Procedure § 415.20. The process was left at and mailed to a postal box maintained by Lemire in a UPS store in Simsbury, CT. The proof of service states that the mailing part of the service was done on August 14, 2015. Section 415.20 states that service by this method "is deemed complete on the 10th day after the mailing." Therefore, assuming Lemire was properly served by this method, service was complete on August 24, 2015, and the 30th day after such service is September 23, 2015.

17. Accordingly, this notice of removal is timely filed under 28 U.S.C. § 1446(b).

18. Removal to this Court is proper as the Superior Court of the State of California, County of Los Angeles, where this action was originally filed, is located within this district.

\\

\\

\\

AKERMAN LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

19. Counsel for Lemire and OCL-Delaware certifies that it will file a copy of this notice of removal with the Clerk of the Superior Court of the State of California, Los Angeles County, and give notice of same to counsel for Baiul.

Dated: September 18, 2015

**AKERMAN LLP**

By: __*/s/ Karen P. Ciccone*_______
Karen P. Ciccone
Attorneys for Defendants JOSEPH CHARLES LEMIRE, an individual, and OLYMPIC CHAMPIONS LTD., a Delaware corporation

**AKERMAN LLP**
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

# EXHIBIT A

PETER M. HOFFMAN; SBN: 66205
8439 Sunset Blvd., Suite 101
Los Angeles, CA 90069
Telephone: (323) 372-3080
Fax: (323) 389-0664
E-mail: phoffman@7artspictures.com

Attorney for Plaintiff

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

JUL 10 2015

Sherri R. Carter, Executive Officer/Clerk
By: Moses Soto, Deputy

SUPERIOR COURT FOR THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| OKSANA BAIUL-FARINA, professionally known as OKSANA BAIUL, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>JOSEPH CHARLES LEMIRE, an individual; OLYMPIC CHAMPIONS LTD, a Delaware corporation; OLYMPIC CHAMPIONS LTD., a British Virgin Islands corporation; REPUBLIC OF UKRAINE, a sovereign nation; DOES 1-10.<br><br>Defendants | Case No. BC 5 8 7 8 4 2<br><br>**COMPLAINT FOR BREACH OF CONTRACT; FRAUD; CONSTRUCTIVE FRAUD; UNJUST ENRICHMENT BASED ON FRAUD OR MISTAKE; ACCOUNTING** |

Plaintiff Oksana Baiul ("Oksana") alleges as follows:

**NATURE OF THE ACTION**

1. This action is brought by Oksana against Defendants Joseph Charles Lemire ("Lemire"), Olympic Champions, Ltd., a Delaware corporation ("OCL"), Olympic Champions, Ltd., a British Virgin Islands Corporation ("OCL-BVI") and the Republic of Ukraine, a sovereign nation ("Ukraine") for:

A. Breach of the implied covenant of good faith and fair dealing in an employment contract between Oksana and OCL and OCL-BVI ("Oksana's Contract") under which Oksana's services as a Gold Medal Olympic and World Champion Figure Skater and the rights to her name, likeness and biographical information ("Oksana's Rights and Services") were "loaned out" by OCL or OCL-BVI to unrelated third parties for substantial compensation payable to Defendants. Defendants breached the implied covenant of good faith and fair dealing by numerous actions and statements, including without limitation, the following: (i) failure and refusal to account to and pay Oksana sums received by Defendants from the "loan-out" of Oksana's Rights and Services; (ii) Defendants' diversion of such sums to their account and for third party investments; (iii) failure and refusal to pursue claims against third parties arising by reason of prior use of Oksana's Rights and Services after demand by Oksana; and (iv) unfair and unreasonable allocation of compensation received for Oksana's Rights and Services and the rights and services of other persons on less than arms-length terms. On information and belief, Oksana's Contract was oral. Defendants have failed and refused to provide Oksana's Contract in writing and executed by her.

B. Fraud in a fax transmission dated April 12, 1996 from Lemire and OCL to Oksana ("Fax Transmission"), in which Defendants represented to Oksana that she was a shareholder in OCL and had executed an employment agreement with OCL. A true and correct copy of the Fax Transmission is attached hereto as Exhibit "A."

C. Constructive fraud in the failure by Lemire and OCL to disclose to Oksana, with whom they had relationship of trust and confidence, numerous material facts including without limitation: (i) the revenues received by Defendants for the "loan out" of Oksana's services as diverted to Defendants for their own account; (ii) conflicts of interest between and among Defendants and Oksana in the collection, allocation and investment of revenues received by Defendants from the "loan out" of Oksana's Rights and Services; (iii) the existence and value of

claims that OCL or Oksana may have against third parties by reason of the "loan out" of Oksana's Rights and Services; (iv) the failure of Defendants to audit and check sums due to OCL or Oksana pursuant to contracts negotiated by Defendants with third parties for the "loan out" of Oksana's Rights and Services; (v) the use of monies generated from the "loan out" of Oksana's service for investments made by Defendants for their own account; and (vi) Oksana's need for and right to independent counsel to review her contracts with third parties for the "loan out" of Oksana's Rights and Services.

D. Unjust enrichment by fraud or mistake in that the Defendants received monies earned by Oksana's Rights and Services for their own account despite their representations that Oksana owned stock in OCL and had a written employment agreement with OCL, in breach of the implied covenant of good faith and fair dealing in Oksana's Contract and pursuant to Defendant's fraud and constructive fraud against Oksana as herein alleged.

E. Accounting of sums due to Oksana by reason of Defendants' breach of implied covenant of good faith and fair dealing, fraud, constructive fraud and unjust enrichment as herein alleged.

2. Oksana was born in the Union of Soviet Socialist Republics in 1977 in an area now part of Ukraine. Oksana won the 1993 World Championship – Ladies Figure Skating at the age of 15. On February 23 and 25, 1994, in two of the most-watched television performances throughout the world, Oksana won the Olympic Gold Medal Ladies Figure Skating in the Seventeenth Winter Olympics at the age of 16. Between 1993 and 1998, Oksana performed as a star in numerous figure skating exhibitions, in commercials and in television programs licensed throughout the world, including without limitation headlining twelve tours and providing her name and likeness for millions of dollars of merchandise bearing the name and/or likeness.

3. At age 16 in 1993, Oksana had limited spoken English and was unable to read or write written English. Based on the recommendation of her coach, Galina Zmievskaya ("Galina"), Oksana entered into Oksana's Contract with Defendants on or about 1993 in the belief confirmed by Defendants that she was an owner of stock in OCL and its predecessor OCL-BVI. Defendants entered into a relationship of trust and confidence with Oksana and arranged for the "loan out" of her services to third parties between 1993 and 1998, on terms negotiated by Defendants and Oksana's talent agency, the William Morris Agency. The relationship of trust and confidence between Oksana and Defendants continued until on or about October 12, 2012 when Oksana discovered that Defendants were in a conspiracy to breach Oksana's Contract and defraud her as herein alleged.

4. Defendants and each of them engaged in a conspiracy to breach the implied covenant of good faith and fair dealing in Oksana's Contract and to defraud Oksana as herein alleged (the "Conspiracy"). Two or more Defendants formed and operated the Conspiracy and acted in concert pursuant to a common and unlawful plan, committed wrongful acts pursuant to the Conspiracy as herein alleged, and damaged Oksana thereby. As part of the Conspiracy with Defendants and as an overt act thereof, Galina represented to third parties that she was the legal guardian of Oksana when in truth and in fact Oksana had no legal guardian in the United States. As part of the Conspiracy and as an overt act thereof, Defendants or some of them forged Oksana's name to one or more contracts between Defendants and third parties. The Conspiracy included without limitation as overt acts the diversion to Defendants or each of them of at least the following amounts among others: (a) over $5,000,000 of revenues earned from Oksana's Rights and Services between 1993 and 1997; (b) over $5,000,000 of revenues earned from the use of Oksana's name and likeness by Sony Signatures on tour merchandise; (c) over $10,000,000 of revenues earned from sales by Health Rider of products or services endorsed by Oksana; and (d) over $12,000,000 paid by Ukraine and third parties on account of Oksana's Rights and Services and investments made by Defendants in her name to

Lemire and other Defendants pursuant to, among other contracts and settlements, Awards entered March 28, 2011 and September 8, 2000 in Lemire v. Ukraine, Nos. ARB/06/18 and ARB/98/1 (Int'l Center For Settlement of Investment Disputes), true and correct copies being attached as Exhibits "B" and "C." Without limiting the generality of the foregoing, Defendants and each of them pursuant to the Conspiracy used and employed various corporate and other entities to accomplish their common and unlawful plan to violate Oksana's Contract and to defraud her as herein alleged, including without limitation, Mirakom Ukraina, Radiocompany Gala, Gala Entertainment, Ukranian Financial Group, and Phoenix Capital and Investment.

5. The last overt act in the Conspiracy was Defendants' refusal to pursue valid claims against Sonar Entertainment Inc. and others with respect to contingent participation due to Oksana by reason of Defendants' "loan out" of Oksana's service, as reflected in the email attached hereto as Exhibit "D" ("Defendants' Email"). Defendants' breaches of Oksana's Contract, unjust enrichment, and fraud on Oksana as herein alleged are inter alia a book account with continuing entries and a recurring wrong that continued to accrue until filing of this Complaint. Defendant' actions and statements as herein alleged are continuing violations of Oksana's rights and of Defendants' continuing and recurring obligations to Oksana as herein alleged.

6. By reason of the relationship of trust and confidence between Defendants and Oksana, Oksana had no duty of inquiry into the action or statements of Defendants until on or about October 12, 2012. Defendants' breaches of contract and fraud as herein alleged were not reasonably discoverable by Oksana and were not discovered by Oksana prior to receipt of Defendants' Email. Prior to receipt of Defendants' Email, Oksana had no notice of circumstances to put a reasonable person on inquiry. Without access to Defendants' books and records, Oksana was unable to have made earlier discovery of such breaches of contract and fraud. In Defendants' Email and otherwise, Defendants refused to give Oksana access to their books and records.

**PARTIES**

7. Oksana is an individual citizen of and domiciled in Ukraine. Oksana is currently a resident of Las Vegas, Nevada. Oksana, as a creditor third party beneficiary, is the successor in interest to the rights of OCL-BVI pursuant to contracts entered into by OCL-BVI with third parties for the provision of Oksana's Rights and Services to such third parties.

8. OCL-BVI was a British Virgin Islands corporation, with its principal place of business in the British Virgin Islands. OCL-BVI was a "loan out" company for Oksana's Rights and Services, which was obligated to pay compensation to Oksana. OCL-BVI ceased business and lost its corporate franchise no later than December 31, 2010. OCL-BVI made one or more contacts initiated by it with the State of California pursuant to Oksana's Contract and the "loan out" of her Rights and Services to third parties in California.

9. OCL was and is a Delaware corporation with its principal place of business in New York, New York. OCL and Lemire are the successors in interest and a mere continuation of OCL-BVI. OCL was and is a "loan out" company for Oksana's Rights and Services which is and was obligated to pay compensation to Oksana. OCL made one or more contacts initiated by it with the State of California pursuant to Oksana's Contract and the "loan out" of her Rights and Services to third parties in California.

10. Lemire is an individual citizen of the United States and domiciled in Ukraine. Lemire had one or more contacts initiated by him with the State of California pursuant to Oksana's Contract and the "loan out" of her Rights and Services to third parties in California.

11. Ukraine is a sovereign nation with a consulate and office in San Francisco, California.

12. The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants sued herein as Does 1-10, inclusive, are unknown to Oksana at the present time, and Oksana therefore sues said Defendants, and each of them, by such fictitious names. If necessary,

Oksana will seek leave of court to amend this Complaint to allege their true names and capacities when they are ascertained.

13. Oksana is informed and believes and on that basis alleges that each of Does 1-10, inclusive, participated in the activities described herein and rendered material assistance to the Defendants in the actions and statements herein alleged as a co-conspirator or otherwise, including without limitation as Oksana's attorneys, talent agents, business managers and coach. Oksana is further informed and believes and on that basis alleges that certain of the Defendants conspired and agreed with and aided and abetted one or more of the other Defendants in additional ways which are unknown to Oksana at this time.

14. Oksana is informed and believes and on that basis alleges that at all relevant times hereto each of the Defendants was the principal or agent, attorney, partner, independent contractor, servant and/or employee of at least one other of the Defendants, and all of the acts performed by them or omissions alleged herein were made in the scope and course of their engagement, employment, agency, partnership or other such relationship, and with the knowledge, consent, approval and/or ratification of the principals, and each of them.

15. Oksana is informed and believes and on that basis alleges that there exists, and at all relevant times hereto has existed, a unity of interest and ownership between OCL and/or OCL-BVI, on the one hand, and Lemire, on the other hand, such that any individuality and separateness between them has ceased and each is the "alter ego" of the other, and that adherence to the fiction of the separate existence of OCL and/or OCL-BVI as an entity or individual distinct from Lemire would therefore permit an abuse of the corporate privilege and would sanction fraud and promote injustice.

16. Oksana is informed and believes and on that basis alleges that each of the parties named herein as Defendants, including those named as Does 1-10, inclusive, are responsible in some

manner for the occurrences and matters alleged herein against such Defendant and that Oksana's injuries and damages were and are the direct and proximate result of the actions and omissions of these Defendants, and each of them. Oksana is further informed and believes and on that basis alleges that each of the Defendants herein is, in some manner or fashion, by contract or otherwise, the successor, assign, joint venturer, co-venturer, co-conspirator, partner, talent agent, manager, coach or alter ego of the others, or was otherwise involved with the other Defendants in the wrongdoing alleged herein, and by virtue of such capacity, assumed the obligations herein owed by other Defendants to Oksana. Each Defendant is liable and responsible on the facts alleged herein for all of the relief sought herein against such Defendant.

**FIRST CAUSE OF ACTION**

**(Breach of Contract)**

**Against All Defendants**

17. Oksana realleges and incorporates herein by this reference as though set forth in full paragraphs 1 through 16 hereinabove inclusive.

18. Defendants have materially breached and repudiated the implied covenant of good faith and fair dealing in Oksana's Contract as herein alleged.

19. As a direct, foreseeable and proximate cause of Defendants' and each of their breach of the implied covenant of good faith and fair dealing on Oksana's Contract. Oksana has suffered and sustained and is entitled to recover from Defendants and each of them actual general, compensatory and consequential damages of no less than $20,000,000.

**SECOND CAUSE OF ACTION**

**(Fraud)**

**Against Lemire and OCL**

20. Oksana realleges and incorporates herein by this reference as though set forth in full

paragraphs 1 through 19 hereinabove inclusive.

21. The Fax Transmission was one or more false representations ("False Statements") by Lemire and OCL that Oksana owned stock in OCL and had a written employment contract with OCL.

22. Lemire and OCL intended for Oksana to rely to her detriment, and Oksana relied to her detriment, on the False Statements in the Fax Transmission in performing services for and granting rights to third parties pursuant to Oksana's Contract.

23. The False Statements by Lemire and OCL constitute fraud and deceit and were not made in good faith since (i) the False Statements assert fact or facts which are not true and for which Lemire and OCL and each of them have no reasonable ground or objective basis for believing that such fact or facts were true and/or (ii) Lemire and OCL and each of them did not intend to perform the promises included in the Fax Transmission.

24. As a direct, proximate and foreseeable result of the fraud and deceit by Lemire and OCL and each of them, Oksana has suffered and sustained and is entitled to recover from Lemire and OCL and each of them actual general, compensatory and consequential damages of no less than $20,000,000.

25. The actions and statements of Lemire and OCL as herein alleged are and were malicious, made in bad faith and with full knowledge of their tortious and wrongful nature. As a result of the foregoing, Oksana is entitled to exemplary or punitive damages in an amount of no less than $30,000,000 to deter and prevent Lemire and OCL from further illegal and tortious conduct in the future.

## THIRD CAUSE OF ACTION

**(Constructive Fraud)**

**Against Lemire and OCL**

26. Oksana realleges and incorporates herein by this reference as though set forth in full paragraphs 1 through 25, hereinabove inclusive.

27. Lemire and OCL and each of them failed to disclose and suppressed material facts ("Undisclosed Facts") as herein alleged when each was bound to disclose such facts to Oksana, and gave information of other facts which are likely to and did mislead Oksana without disclosure of the Undisclosed Facts. Lemire and OCL intended that Oksana rely to her detriment, and Oksana relied to her detriment, by reason of her lack of knowledge of the Undisclosed Facts in performing services and granting rights to third parties pursuant to Oksana's Contract.

28. As a direct, proximate and foreseeable result of the constructive fraud and deceit by Lemire and OCL and each of them, Oksana has suffered and sustained and is entitled to recover from Lemire and OCL and each of them actual, general, compensatory and consequential damages of no less than $20,000,000.

## FOURTH CAUSE OF ACTION

**(Unjust Enrichment By Fraud And Mistake)**

**Against All Defendants**

29. Oksana realleges and incorporates herein by this reference as though set forth in full paragraphs 1 through 28 hereinabove inclusive.

30. Defendants through fraud or mistake as herein alleged have been unjustly enriched by the provision of Oksana's Rights and Services to third parties in breach of the implied covenant of good faith and fair dealing of Oksana's Contract and by fraud and constructive fraud against Oksana as herein alleged.

31. As a direct, foreseeable and proximate cause of Defendants' unjust enrichment by fraud or mistake, Oksana has suffered and sustained and is entitled to recover from Defendants and each of them actual general, compensatory and consequential damages of no less than $20,000,000.

**FIFTH CAUSE OF ACTION**

**(Accounting)**

**Against All Defendants**

32. Oksana realleges and incorporates herein by this reference as though set forth in full paragraphs 1 through 31 hereinabove inclusive.

33. Defendants have failed and refused and continue to fail and refuse to account to and pay to Oksana sums due to her pursuant to Oksana's Contract and the covenant of good faith and fair dealing therein contained. An accounting is necessary and appropriate since the exact and precise monies due to Oksana are unknown to Oksana and cannot be ascertained without an accounting. Oksana has demanded a full and proper accounting from Defendants which Defendants have denied and refused to provide.

**WHEREFORE**, Oksana prays for judgment as follows against Defendants and each of them:

**ON ALL CAUSES OF ACTION**

A. For general, compensatory and consequential damages in an amount to be proved at the trial of this matter, but in any event not less than $20,000,000.

B. For exemplary and punitive damages in an amount no less than $30,000,000.

C. For an accounting of all monies received by Defendants from Oksana's Rights and Services pursuant to Oksana's Contract.

D. For interest on said amounts at the rate permitted by law.

E. For Oksana's attorney fees and costs of suit.

F. For such other and further relief as the Court may deem just and proper.

Date: July 8, 2015

PETER M. HOFFMAN

By: ______________________

Peter M. Hoffman
Attorney for Plaintiff

# EXHIBIT "A"

6F ^A

# OLYMPIC CHAMPIONS, LTD.

Company for Champions

## FAX TRANSMITTAL

| | |
|---|---|
| **To:** | **Ms. Oksana Baiul** |
| **From:** | **Joseph Lemire** |
| | **Olympic Champions, Ltd** |
| **Phone:** | **011.380.44.227.6171 Fax: 011.380.44.227.6852** |
| **Int'l Phone:** | **011.380.44.230.2331** |
| **Date:** | **April 12, 1996** |

**Dear Ms. Baiul:**

**Pursuant to your request regarding your application for your "green card", attached are your personal United States tax forms for 1995 and 1994. In addition, is a copy of the extension to file your corporation tax forms for the fiscal year ending August 31, 1995, in which in excess of $1,000,000 in corporate income tax was paid pursuant to quarterly tax payments.**

**To summarize your tax situation, in the period ending December 31, 1994 you paid personal income taxes in the amount of $224,674. In August 1994 you formed Olympic Champions, Ltd with other Olympic skaters. Pursuant to the formation of the company, you executed an employment agreement ("a loan-out agreement") wherein the corporation paid you a monthly salary. With respect to the excess earnings over your monthly salary, the corporation paid quarterly taxes for the fiscal year September 1, 1994 through August 31, 1995. Furthermore, the corporation has made first and second quarter payments for fiscal year ending August 31, 1996. For your personal salary for the year ending December 31, 1995 you paid personal income taxes in the amount of $13,550. Furthermore subsequent to your move of residence we are in the process of calculating and filing your personal taxes for Connecticut. These forms will be forwarded to you when completed.**

**Should you have any further questions, or should any other concerned person have a question, please have them contact me directly.**

[signature]

**Joseph Lemire, vice-president, OCL**

OLYMPIC CHAMPIONS LTD.
(USA)

# EXHIBIT "B"

# INTERNATIONAL CENTRE FOR SETTLEMENT OF INVESTMENT DISPUTES
# WASHINGTON, D.C.

In the matter between

**JOSEPH CHARLES LEMIRE**
(Claimant)

and

**UKRAINE**
(Respondent)

**(ICSID CASE NO. ARB/06/18)**

---

## AWARD

---

*Members of the Tribunal:*
Professor Juan Fernández-Armesto, *President*
Mr. Jan Paulsson
Dr. Jürgen Voss

*Secretary of the Tribunal:*
Ms. Aïssatou Diop

*Representing Claimant:*
Mr. Hamid G. Gharavi
Mr. Stephan Adell
Ms. Nada Sader
*Derains & Gharavi*
Paris, France

*Representing Respondent:*
Mr. John S. Willems
Mr. Michael A. Polkinghorne
Ms. Olga Mouraviova
Ms. Nathalie Makowski
*White & Case LLP*
Paris, France

Mr. Sergii Svyryba
Ms. Olga Glukhovska
Ms. Olha Yaniutina
Mr. Markiyan Kliuchkovskyi
Ms. Oksana Tsymbrivska
*Magisters*
Kyiv, Ukraine

*Date of Dispatch to the Parties: March 28, 2011*

## V. DECISION

On the basis of the reasons given both in its First Decision and in the present Award, the Tribunal, by majority decision, hereby:

1. Orders Respondent to pay to Claimant 8,717,850 USD as compensation for Respondent's violation of the FET standard defined in the BIT, within 60 days from the delivery of this Award;
2. Orders Respondent to pay to Claimant 750,000 USD as compensation for the costs and expenses incurred in this arbitration, within 60 days from the delivery of this Award;
3. Orders Respondent to pay to Claimant interest on the amounts established in the two preceding paragraphs, if such amounts have not been paid within 60 days from the delivery of this Award; interest shall (i) accrue as from the date of delivery of this Award until full payments of any amounts owed, (ii) be calculated at the LIBOR rate for six month deposits denominated in USD, on the date of delivery of this Award, and adjusted every six months thereafter, plus a margin of 2% and (iii) be capitalised every six months from the date of delivery of this Award;
4. Dismisses all other claims.

Dr. Voss dissents from this Award and, as authorized by Rule 47(3) of the ICSID Arbitration Rules, attaches his individual opinion. In accordance with Rule 47(2) of the ICSID Arbitration Rules, the Award is signed by the members of the Tribunal who voted for it.

Professor Juan Fernandez-Armesto
President

Date: 10.3.11

Mr. Jan Paulsson
Arbitrator

Date: 3/3/11

# EXHIBIT "C"

International Centre for Settlement of Investment Disputes
(Additional Facility)

# AWARD

Rendered by the Arbitral Tribunal in the Case of

Joseph Charles Lemire

v.

Ukraine

(ICSID Case No. ARB(AF)/98/1)

*Date of dispatch to the parties: September 18, 2000*

## I. THE ARBITRAL PROCEEDINGS

**Procedural Matters**

1. By Consent to Arbitrate and Request for Approval dated November 14, 1997, Mr. Joseph Charles Lemire, a national of the United States of America, requested the Secretary-General of the International Centre for Settlement of Investment Disputes (hereinafter "ICSID") to approve and register his request for access to arbitration against Ukraine under the ICSID Additional Facility Rules and the 1994 Treaty Between the United States of America and Ukraine Concerning the Encouragement and Reciprocal Protection of Investment.

2. By letter dated December 10, 1997, the Secretary-General of ICSID informed the Parties that the requirements of Article 4(2) of the ICSID Additional Facility Rules had been fulfilled and that the Claimant's application for access to the Additional Facility had been approved and registered.

3. By Notice to Institute Arbitration Proceedings dated December 29, 1997, the Claimant requested the Secretary-General of ICSID to register the Notice and dispatch to the parties a certificate of registration according to the Arbitration (Additional Facility) Rules.

4. By letter dated January 16, 1998, the Secretary-General of ICSID informed the Parties that the Notice had been registered in the Arbitration Register, and issued and dispatched to the Parties a Certificate of Registration of the case.

5. Pursuant to Article 10(1) of the Arbitration (Additional Facility) Rules, Mr. Lemire appointed as arbitrator Mr. Jan Paulsson (a French national) and Ukraine appointed as arbitrator Dr. Jürgen Voss (a German national). By agreement of the Parties, Professor Sir Elihu Lauterpacht, C.B.E., Q.C. (a British national) was appointed President of the Tribunal. The Tribunal was constituted on August 13, 1998.

6. On October 6, 1998, Ukraine filed its Objection to the Tribunal's Competence. On October 13, 1998 the Claimant filed Ancillary Claims.

7. The first session of the Arbitral Tribunal was held, with the Parties' agreement, in London on November 11, 1998. During the course of the first session, the President recalled that the Respondent had filed objections to jurisdiction and the proceedings on the merits were suspended in accordance with Article 46(4) of the Arbitration (Additional Facility) Rules. The Tribunal proposed, and the Parties agreed to, a schedule for the filing of observations on Ukraine's Objection to the Tribunal's Competence.

**Settlement of the Dispute on Agreed Terms**

8. On September 24, 1999, the Tribunal issued its Decision on Ukraine's Objection to the Tribunal's Competence, joining the jurisdictional objections to the merits of the dispute. After consultations with the Parties, the schedule for the further filings on the merits was fixed.

9. On March 20, 2000 the Parties concluded an agreement for the final settlement of all the claims, complaints and requests contained in the Consent to Arbitrate, Notice for Registration, Ancillary Claims and all other letters of the Claimant to the Respondent or ICSID as well as other correspondence of the Claimant addressed to third parties.

10. In accordance with Article 50 of the Arbitration (Additional Facility) Rules, the Parties agreed to request the Tribunal to record the settlement in the form of an award of the Tribunal. The Parties further agreed that the proceedings would thereby be discontinued.

11. The Tribunal is willing to meet the request of the Parties to record the settlement between them in the form of an award.

## II. THE AWARD

13. Accordingly, the Tribunal *orders* unanimously that the said agreement between the Parties as set forth below shall be recorded verbatim as an award on agreed terms:

# "AGREEMENT" ON THE DISPUTE SETTLEMENT

## Joseph Charles Lemire v. Ukraine

## (ICSID Case No. ARB(AF)/98/1)

## MARCH 20, 2000

This Agreement on the Dispute Settlement (hereinafter called "*this Agreement*" is entered into by and between:

**Joseph Charles Lemire**, the US national (hereinafter called as "*the Claimant*");

and

**The Government of Ukraine** (hereinafter called as "*the Respondent*"), represented by the Minister of Economy S.L. Tihipko.

The Claimant and the Respondent are hereinafter collectively referred to from time to time as the "*Parties*" and individually as a "*Party*".

**WHEREAS**, the Parties desire to reach a settlement of the International Center for Settlement of Investment Disputes (hereinafter referred to as "the ICSID") Case # ARB (AF)/98/1 upon the terms and conditions hereinafter set forth;

**NOW, THEREFORE**, the Parties agree as follows:

### 1. BACKGROUND

1. On January 16, 1998 the Secretary-General of the ICSID registered in the Arbitration Register the December 29, 1997 Notice to Institute Arbitration Proceedings with the use of the Additional Facility of ICSID (hereinafter called "the Notice for Arbitration") addressed by the U.S. national Mr. Jozeph Charles Lemire (hereinafter called "the Claimant") in relation to an investment dispute between him and Ukraine (hereinafter referred to as "the Respondent").

2. On page 5 of the Consent to Arbitrate and Request for Approval for use of the Additional Facility of the ICSID dated November 14, 1997 (hereinafter referred to as "the Consent to Arbitrate") the Claimant stated that he wished to arbitrate his investment dispute with Ukraine in accordance with the provisions of the Treaty between the United States of America and Ukraine Concerning the Encouragement and Reciprocal Protection of Investment (hereafter called "the Bilateral Investment Treaty"). The Claimant also stated that his investment dispute with Ukraine existed at the time the Bilateral Investment Treaty entered into force and is of a continuing nature. The Claimant expressed his consent to the submission of that dispute to binding arbitration under the Additional Facility of the ICSID in accordance with Article VI(3)(a)(ii) of the Bilateral Investment Treaty.

3. The Bilateral Investment Treaty was signed on March 4, 1994, entered into force on November 16, 1996 and remains in force at present.

4. At the time when the Notice for Arbitration was filed with the Secretary-General of the ICSID and registered in the Arbitration Register, Ukraine was not a party to the Convention on the Settlement of Investment Disputes between States and Nationals of Other States. The consent of Ukraine to the submission of any investment dispute for settlement by binding arbitration to the Additional Facility of the ICSID, provided there is a written consent of the national or company of the United States of America, was given in Article VI(4) of the Bilateral Investment Treaty.

5. In the letter addressed to the Secretary-General of the ICSID of March 12, 1998 signed by the Acting Chairman of the National Agency of Ukraine for Reconstruction and Development Mr. Vladimir Ignaschenko, it was stated that the National Agency was authorized by the President of Ukraine to represent Ukraine in this dispute and is prepared to cooperate closely with ICSID in settlement of the issue.

6. In accordance with Article 14 of the ICSID Additional Facility Arbitration Rules, the Tribunal was constituted of three members Professor Sir Elihu Lauterpacht, Mr. Jan Paulsson and Dr. Juergen Voss, and the proceedings began on August 13, 1998.

7. On October 5, 1998 in accordance with Article 46 of the ICSID Additional Facility Arbitration Rules, the Respondent filed the Objection to

the Tribunal's Competence with the Secretary-General of the ICSID. In its Decision of September 24, 1999 the Tribunal joined the Respondent's Objection to the Tribunal's Competence to the merits of the case and resumed the suspended proceedings on the merits.

8. On October 13, 1998 the Claimant addressed to the Tribunal its Ancillary Claims (hereinafter referred to as the "Ancillary Claims") to which the Respondent extended its Objection to the Tribunal's Competence.

9. On October 15, 1999 the Claimant addressed a formal invitation to the Vice-Prime Minister of Ukraine Mr. Sergiy Tihipko to reach an amicable resolution of the dispute. Based on the Claimant's request of February 16, 2000, and the Respondent's consent to it, the Tribunal suspended the proceedings till June 1, 2000 in order to allow the parties to finalize the peaceful settlement.

## II. SETTLEMENT OF THE DISPUTE

10. The Parties agree and confirm that all the claims, complaints and requests contained in the Consent to Arbitrate, Notice for Arbitration, Ancillary Claims and all other official letters of the Claimant to the Respondent or ICSID, as well as other correspondence of the Claimant addressed to third parties are hereby finally settled.

11. By such settlement the Parties, in the event of compliance with this Agreement, exclude all of the claims referred to in item 10 of Section II "Settlement of the Dispute" from any further judicial or arbitration settlement.

12. The Parties acknowledge the absence of any claims or misunderstandings between them as on the date of signing this Agreement.

13. As a good-will gesture, the Respondent agrees to fulfill the following additional conditions of the Claimant for the purpose of this settlement under the schedule below.

(a) By April 15, 2000 the Commission of experts, appointed by the Respondent, shall examine the quality of broadcasting within the radio frequencies band of FM 100-108. Based on the conclusions of the Commission, the Respondent will take

necessary, reasonable among others, technical measures to remove the obstacles (if any) for radio broadcasting of Gala Radio on FM 100 in Kiev by June 1, 2000.

(b) By May 15, 2000 the Respondent, in person of the State Committee on Communications and Information Technology, agrees to use its best possible efforts to consider in a positive way the application of Gala Radio to provide it with the licenses for radio frequencies (provided there are free frequencies bands) in the following cities: Kharkiv, Lviv, Donetsk, Zaporizhya, Lugansk, Simpheropol, Dniepropetrovsk, Odessa, Vynnitsa, Kryviy Rog, Uzhgorod.

The Claimant can apply for the radio channels in the above cities to the National Council for TV and Radio Broadcasting (hereinafter called "the National Council") in a due course in accordance with the current legislation after the National Council has been fully personally formed under the existing law of Ukraine. The Respondent, within the limits of its powers, will assist for the positive consideration of this issue at the National Council.

The granting of licenses for radio frequencies and broadcasting channels will be made in accordance with the requirements of Ukrainian legislation upon payment of the license fees.

(c) By April 10, 2000 the Respondent will propose for the Claimant's consideration three locations for the beauty salon on the terms of rent.

14. In the event that the Respondent appears to be unable to follow the above schedule for the objective reasons, it will promptly inform the Claimant and agree with it the revised schedule.

15. The Parties shall refrain from any demands at present or in the future in any judicial or arbitration forum on compensation of material and/or moral damages with regard to the issues included into this settlement.

16. The Agreement shall not be treated as a document granting any rights, benefits or privileges which are different or additional to the ordinary

rights and obligations of a foreign investor in Ukraine in accordance with the Ukrainian laws and international treaties to which Ukraine is a party.

17. In accordance with Article 50 of the ICSID Additional Facility Arbitration Rules, the Parties agree to request the Tribunal to record the settlement in the form of the Tribunal's award. Such record will mean the discontinuance of the proceedings.

18. The Parties agree that the Tribunal's award containing this Agreement as a part of it can be published in the ICSID Review.

19. The Parties agree that each of them bears its own fees and expenses in connection with the proceedings under the ICSID Case # ARB(AF)/98/1.

## III. PRINCIPLES OF INTERPRETATION AND IMPLEMENTATION OF THE AGREEMENT

20. Each Party shall act in accordance with good faith and fair dealing in the international business. The Parties shall not exclude or restrict this duty.

21. The mere fact that at the moment of the conclusion of this Agreement the performance of the obligation assumed by a Party was not possible shall not adversely affect the validity of this Agreement.

22. This Agreement shall be interpreted according to the common intent of the Parties. If such an intention cannot be established, the Agreement shall be interpreted according to the meaning that reasonable persons of the same kind as the Parties would give to it in the same circumstances.

The Statement and other actions of a Party shall be interpreted according to that Party's intention if the other Party was aware of, or should have been aware of that intention.

If the preceding paragraph is not applicable, such statements and other actions of a Party shall be interpreted according to the meaning that a reasonable person of the same kind as the other Party would give to it in the same circumstances.

23. For interpreting this Agreement all the circumstances shall be taken into consideration, including the following:

(a) preliminary negotiations between the Parties;
(b) the practices which the Parties have established in their relations;
(c) the conduct of the parties following the conclusion of the Agreement;
(d) the nature and purpose of the Agreement;
(e) the meanings commonly given to the terms and expressions in the business concerned;
(f) usages.

Terms and conditions of the present Agreement shall be interpreted in such a way that all of such terms are deemed effective without making void any of them.

24. Each Party shall cooperate with the other Party when such cooperation may be reasonably expected for the performance of that Party's obligations under the present Agreement.

To the extent that an obligation of the Party involves a duty to achieve a certain result, this Party is to attain it.

25. Where the performance of the Agreement becomes more onerous for one of the Parties, that Party is nevertheless bound to perform its obligations subject to the following provisions of this Agreement on hardship.

There is hardship where the occurrence of the events fundamentally alters the equilibrium of the Agreement either because the cost of the Party's performance has increased or the value of the performance a Party receives has diminished, and

(a) the events occur or become known to the disadvantaged Party after the conclusion of the Agreement;
(b) the events could not have been reasonably taken into account by the disadvantaged Party at the time of the conclusion of the Agreement;
(c) the events are beyond control of the disadvantaged Party; and

(d) the risk of occurrence of the events was not assumed by the disadvantaged Party.

In case of hardship the disadvantaged Party is entitled to request a revision of the Agreement. The request shall be made without undue delay and shall indicate the grounds on which it is based.

The request for revision of the Agreement does not in itself entitle the disadvantaged Party to withhold performance hereunder.

Upon failure to reach agreement within a reasonable time either Party may resort to the arbitration court, according to Article 31, (Section IV) of the present Agreement.

26. Non-performance shall mean the failure by a Party to perform any of its obligations under the present Agreement, including improper performance or late performance.

The non-performing Party may, at its own expense, remedy any non-performance, provided that

- (a) without undue delay, it gives notice indicating the proposed manner and time period of such cure;
- (b) the cure is appropriate in the given circumstances;
- (c) the aggrieved Party has no legitimate interest in refusing such cure;

In the event of non-performance the aggrieved Party may by notice to the other Party allow an additional period of time for performance of the cure.

During the additional period the aggrieved Party may withhold performance of its own reciprocal obligations and may claim damages but may not resort to any other legal remedy. If it receives notice from the other Party that the latter will not perform its obligations under the present Agreement within that period, or if upon expiration of that period due performance has not been made, the aggrieved Party may resort to any of the legal remedies that may be available under this Agreement.

Where in case of delay in performance, which is not fundamental, the aggrieved Party has given notice allowing an additional period of time of reasonable length, it may terminate the Agreement upon the expiry of that period. If the additional period allowed is not of reasonable length it shall be

extended up to a reasonable length. The aggrieved Party may in its notice provide that if the other Party fails to perform within the period allowed by the notice the Agreement shall automatically terminate.

## IV. MISCELLANEOUS

27. This Agreement constitutes the entire agreement between the Parties on the subject matter hereof and supersedes all prior correspondence, negotiations and understandings between them with respect to the matters covered herein.

28. This Agreement shall be binding on the respective legal successors of the Parties. Neither of the Parties may assign or otherwise transfer all or any part of their rights or obligations under this Agreement to any third party.

29. If any provision of this Agreement is held by a court or arbitration tribunal of competent jurisdiction to be invalid, unenforceable or violative of any applicable law, such circumstance shall not have the effect of rendering any other provision or provisions hereinafter contained invalid, inoperative or unenforceable.

30. This Agreement shall be governed by the applicable law as determined by Art. 55 of the ICSID Additional Facility Arbitration Rules.

31. All the disputes arising from or in connection with this Agreement shall be settled by negotiations. In the event no solution is achieved within 60 days from the date of beginning of negotiations, either party may address to the ICSID its application for settlement under the ICSID Additional Facility Arbitration Rules.

32. This Agreement shall be executed in the Ukrainian and English languages. In the event of dispute between the two texts, the Ukrainian language shall prevail.

33. This Agreement shall be executed in three counterparts, one for each party and one for the Tribunal, each of which shall be deemed the original.

34. This Agreement enters into force on the date of signing by the Parties and shall not be limited in time.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement on March 20, 2000.

| (signed by) | (signed by) |
|---|---|
| S. L. Tihipko<br>Minister of Economy | Joseph Charles Lemire" |

14. The Tribunal notes the Parties' agreement, set forth in Article 19 of the "Agreement on the Dispute Settlement," that each side bears its own fees and expenses. The Tribunal *orders* unanimously that the fees and expenses of the members of the Tribunal and the charges for the use of the facilities of ICSID, which have been covered by the equal advance deposits by both parties, shall be borne by the parties in equal shares.

*Sir Elihu Lauterpacht*, CBE QC

*Jan Paulsson* *Jürgen Voss*

INTERNATIONAL CENTRE FOR SETTLEMENT OF INVESTMENT DISPUTES
WASHINGTON, D.C.

In the matter between

JOSEPH CHARLES LEMIRE
(Claimant)

and

UKRAINE
(Respondent)

(ICSID CASE NO. ARB/06/18)

---

# AWARD

---

*Members of the Tribunal*
Professor Juan Fernández-Armesto, *President*
Mr. Jan Paulsson
Dr. Jürgen Voss

*Secretary of the Tribunal*
Ms. Aïssatou Diop

*Representing Claimant:*
Mr. Hamid G. Gharavi
Mr. Stephan Adell
Ms. Nada Sader
*Derains & Gharavi*
Paris, France

*Representing Respondent:*
Mr. John S. Willems
Mr. Michael A. Polkinghorne
Ms. Olga Mouraviova
Ms. Nathalie Makowski
*White & Case LLP*
Paris, France

Mr. Sergii Svyryba
Ms. Olga Glukhovska
Ms. Olha Yanintina
Mr. Markiyan Kliuchkovskyi
Ms. Oksana Tsymbrivska
*Magisters*
Kyiv, Ukraine

*Date of Dispatch to the Parties: March 28, 2011*

## V. DECISION

On the basis of the reasons given both in its First Decision and in the present Award, the Tribunal, by majority decision, hereby:

1. Orders Respondent to pay to Claimant 8,717,850 USD as compensation for Respondent's violation of the FET standard defined in the BIT, within 60 days from the delivery of this Award;
2. Orders Respondent to pay to Claimant 750,000 USD as compensation for the costs and expenses incurred in this arbitration, within 60 days from the delivery of this Award;
3. Orders Respondent to pay to Claimant interest on the amounts established in the two preceding paragraphs, if such amounts have not been paid within 60 days from the delivery of this Award; interest shall (i) accrue as from the date of delivery of this Award until full payments of any amounts owed, (ii) be calculated at the LIBOR rate for six month deposits denominated in USD, on the date of delivery of this Award, and adjusted every six months thereafter, plus a margin of 2% and (iii) be capitalised every six months from the date of delivery of this Award;
4. Dismisses all other claims.

Dr. Voss dissents from this Award and, as authorized by Rule 47(3) of the ICSID Arbitration Rules, attaches his individual opinion. In accordance with Rule 47(2) of the ICSID Arbitration Rules, the Award is signed by the members of the Tribunal who voted for it.

| | |
|---|---|
| Professor Juan Fernandez-Armesto<br>President | Mr. Jan Paulsson<br>Arbitrator |
| Date: 10.3.11 | Date: 3/3/11 |

# EXHIBIT "D"

**Peter Hoffman**

| | |
|---|---|
| **From:** | Martin.Domb@akerman.com |
| **Sent:** | Monday, June 22, 2015 7:40 AM |
| **To:** | Peter Hoffman |
| **Cc:** | rjmarkovich@me.com; benjamin.joelson@akerman.com |
| **Subject:** | RE: Olympic Champions Ltd. |

Mr. Hoffman,

Having consulted with our client, OCL, we confirm that OCL does not authorize you or your client, Ms. Baiul, to take any action purportedly in the name or on behalf of OCL. A long time ago, Ms. Baiul was employed by OCL (in 1994 to 1997), but she has never been a shareholder of OCL.

Sincerely,
Martin Domb

**From:** Peter Hoffman [mailto:PHOFFMAN@7ARTSPICTURES.COM]
**Sent:** Thursday, June 18, 2015 4:34 PM
**To:** Domb, Martin (Ptnr-NY)
**Cc:** rjmarkovich@me.com; Joelson, Benjamin (Assoc-NY)
**Subject:** RE: Olympic Champions Ltd.

Thank you for the reply. I can think of no reason why your client should object to this action which benefits shareholders at no cost to OCL. I expect to hear by Monday on our requests.

**From:** Martin.Domb@akerman.com [mailto:Martin.Domb@akerman.com]
**Sent:** Thursday, June 18, 2015 12:57 PM
**To:** Peter Hoffman
**Cc:** rjmarkovich@me.com; benjamin.joelson@akerman.com
**Subject:** RE: Olympic Champions Ltd.

Mr. Hoffman,

We are consulting with our clients and expect to send you a further response tomorrow, June 19. In the meantime, our client, OCL, does object to you or your client, Ms. Baiul, taking any action purportedly in the name or on behalf of OCL.

Sincerely,

**Martin Domb**
**Akerman LLP | 666 Fifth Avenue | 20th Floor | New York, NY 10103**
Dir: 212.880.3811 | Main: 212.880.3800 | Fax: 212.880.8965
martin.domb@akerman.com

vCard

CM-010

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
Peter M. Hoffman, SBN: 66205
8439 Sunset Blvd., Suite 101
Los Angeles, CA 90069
phoffman@7artspictures.com
TELEPHONE NO: 323-372-3080 FAX NO: 323-389-0664
ATTORNEY FOR (Name): Plaintiff

FOR COURT USE ONLY

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

JUL 10 2015

Sherri R. Carter, Executive Officer/Clerk
By: Moses Soto, Deputy

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 N. Hill St.
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Central District

CASE NAME:
Oksana Batul-Farina v. Joseph Charles Lemire, et al

**CIVIL CASE COVER SHEET**

[✓] Unlimited (Amount demanded exceeds $25,000)
[ ] Limited (Amount demanded is $25,000 or less)

**Complex Case Designation**
[ ] Counter [ ] Joinder
Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402)

CASE NUMBER: BC 5 8 7 8 4 2
JUDGE:
DEPT:

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[✓] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

2. This case [ ] is [✓] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought (*check all that apply*): a. [✓] monetary b. [ ] nonmonetary; declaratory or injunctive relief c. [ ] punitive
4. Number of causes of action (*specify*):
5. This case [ ] is [✓] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (*You may use form CM-015.*)

Date: July 10, 2015

Peter M. Hoffman
(TYPE OR PRINT NAME)

(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**

- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

CM-010

# INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
- Auto (22)–Personal Injury/Property Damage/Wrongful Death
- Uninsured Motorist (46) (*if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto*)

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
- Asbestos (04)
  - Asbestos Property Damage
  - Asbestos Personal Injury/ Wrongful Death
- Product Liability (*not asbestos or toxic/environmental*) (24)
- Medical Malpractice (45)
  - Medical Malpractice– Physicians & Surgeons
  - Other Professional Health Care Malpractice
- Other PI/PD/WD (23)
  - Premises Liability (e.g., slip and fall)
  - Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  - Intentional Infliction of Emotional Distress
  - Negligent Infliction of Emotional Distress
  - Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
- Business Tort/Unfair Business Practice (07)
- Civil Rights (e.g., discrimination, false arrest) (*not civil harassment*) (08)
- Defamation (e.g., slander, libel) (13)
- Fraud (16)
- Intellectual Property (19)
- Professional Negligence (25)
  - Legal Malpractice
  - Other Professional Malpractice (*not medical or legal*)
- Other Non-PI/PD/WD Tort (35)

**Employment**
- Wrongful Termination (36)
- Other Employment (15)

**Contract**
- Breach of Contract/Warranty (06)
  - Breach of Rental/Lease
    - Contract (*not unlawful detainer or wrongful eviction*)
  - Contract/Warranty Breach–Seller Plaintiff (*not fraud or negligence*)
  - Negligent Breach of Contract/ Warranty
  - Other Breach of Contract/Warranty
- Collections (e.g., money owed, open book accounts) (09)
  - Collection Case–Seller Plaintiff
  - Other Promissory Note/Collections Case
- Insurance Coverage (*not provisionally complex*) (18)
  - Auto Subrogation
  - Other Coverage
- Other Contract (37)
  - Contractual Fraud
  - Other Contract Dispute

**Real Property**
- Eminent Domain/Inverse Condemnation (14)
- Wrongful Eviction (33)
- Other Real Property (e.g., quiet title) (26)
  - Writ of Possession of Real Property
  - Mortgage Foreclosure
  - Quiet Title
  - Other Real Property (*not eminent domain, landlord/tenant, or foreclosure*)

**Unlawful Detainer**
- Commercial (31)
- Residential (32)
- Drugs (38) (*if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential*)

**Judicial Review**
- Asset Forfeiture (05)
- Petition Re: Arbitration Award (11)
- Writ of Mandate (02)
  - Writ–Administrative Mandamus
  - Writ–Mandamus on Limited Court Case Matter
  - Writ–Other Limited Court Case Review
- Other Judicial Review (39)
  - Review of Health Officer Order
  - Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
- Antitrust/Trade Regulation (03)
- Construction Defect (10)
- Claims Involving Mass Tort (40)
- Securities Litigation (28)
- Environmental/Toxic Tort (30)
- Insurance Coverage Claims (*arising from provisionally complex case type listed above*) (41)

**Enforcement of Judgment**
- Enforcement of Judgment (20)
  - Abstract of Judgment (Out of County)
  - Confession of Judgment (*non-domestic relations*)
  - Sister State Judgment
  - Administrative Agency Award (*not unpaid taxes*)
  - Petition/Certification of Entry of Judgment on Unpaid Taxes
  - Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
- RICO (27)
- Other Complaint (*not specified above*) (42)
  - Declaratory Relief Only
  - Injunctive Relief Only (*non-harassment*)
  - Mechanics Lien
  - Other Commercial Complaint Case (*non-tort/non-complex*)
  - Other Civil Complaint (*non-tort/non-complex*)

**Miscellaneous Civil Petition**
- Partnership and Corporate Governance (21)
- Other Petition (*not specified above*) (43)
  - Civil Harassment
  - Workplace Violence
  - Elder/Dependent Adult Abuse
  - Election Contest
  - Petition for Name Change
  - Petition for Relief From Late Claim
  - Other Civil Petition

| SHORT TITLE: Balul-Fanna v. Lemire et al | CASE NUMBER BC 5 8 7 8 4 2 |
|---|---|

# CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

This form is required pursuant to Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.

Item I. Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ☑ YES CLASS ACTION? ☐ YES LIMITED CASE? ☐ YES TIME ESTIMATED FOR TRIAL 10 ☐ HOURS/ ☑ DAYS

Item II. Indicate the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet form, find the main Civil Case Cover Sheet heading for your case in the left margin below, and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check one Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Local Rule 2.0.

**Applicable Reasons for Choosing Courthouse Location (see Column C below)**

1. Class actions must be filed in the Stanley Mosk Courthouse, central district.
2. May be filed in central (other county, or no bodily injury/property damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| | A<br>Civil Case Cover Sheet Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| Auto Tort | Auto (22) | ☐ A7100 Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | ☐ A7110 Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| Other Personal Injury/ Property Damage/ Wrongful Death Tort | Asbestos (04) | ☐ A6070 Asbestos Property Damage | 2. |
| | | ☐ A7221 Asbestos - Personal Injury/Wrongful Death | 2. |
| | Product Liability (24) | ☐ A7260 Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | ☐ A7210 Medical Malpractice - Physicians & Surgeons | 1., 4. |
| | | ☐ A7240 Other Professional Health Care Malpractice | 1., 4. |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250 Premises Liability (e.g., slip and fall) | 1., 4. |
| | | ☐ A7230 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 4. |
| | | ☐ A7270 Intentional Infliction of Emotional Distress | 1., 3. |
| | | ☐ A7220 Other Personal Injury/Property Damage/Wrongful Death | 1., 4. |

| SHORT TITLE: Balul-Farina v. Lemire et al | CASE NUMBER |
|---|---|

| | A<br>Civil Case Cover Sheet Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| Non-Personal Injury/ Property Damage/ Wrongful Death Tort | Business Tort (07) | ☐ A6029 Other Commercial/Business Tort (not fraud/breach of contract) | 1., 3. |
| | Civil Rights (08) | ☐ A6005 Civil Rights/Discrimination | 1., 2., 3 |
| | Defamation (13) | ☐ A6010 Defamation (slander/libel) | 1., 2., 3 |
| | Fraud (16) | ☐ A6013 Fraud (no contract) | 1., 2., 3 |
| | Professional Negligence (25) | ☐ A6017 Legal Malpractice<br>☐ A6050 Other Professional Malpractice (not medical or legal) | 1., 2., 3<br>1., 2., 3. |
| | Other (35) | ☐ A6025 Other Non-Personal Injury/Property Damage tort | 2.,3. |
| Employment | Wrongful Termination (36) | ☐ A6037 Wrongful Termination | 1., 2., 3 |
| | Other Employment (15) | ☐ A6024 Other Employment Complaint Case<br>☐ A6109 Labor Commissioner Appeals | 1., 2., 3.<br>10. |
| Contract | Breach of Contract/ Warranty (06) (not insurance) | ☐ A6004 Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction)<br>☐ A6008 Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence)<br>☐ A6019 Negligent Breach of Contract/Warranty (no fraud)<br>☒ A6028 Other Breach of Contract/Warranty (not fraud or negligence) | 2., 5.<br>2., 5.<br>1., 2., 5.<br>1., (2.), 5. |
| | Collections (09) | ☐ A6002 Collections Case-Seller Plaintiff<br>☐ A6012 Other Promissory Note/Collections Case | 2., 5., 6.<br>2., 5. |
| | Insurance Coverage (18) | ☐ A6015 Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract (37) | ☒ A6009 Contractual Fraud<br>☐ A6031 Tortious Interference<br>☒ A6027 Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., (2.), 3., 5.<br>1., 2., 3., 5.<br>1., (2.), 3., 8. |
| Real Property | Eminent Domain/Inverse Condemnation (14) | ☐ A7300 Eminent Domain/Condemnation Number of parcels______ | 2. |
| | Wrongful Eviction (33) | ☐ A6023 Wrongful Eviction Case | 2., 6. |
| | Other Real Property (26) | ☐ A6018 Mortgage Foreclosure<br>☐ A6032 Quiet Title<br>☐ A6060 Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6.<br>2., 6.<br>2., 6. |
| Unlawful Detainer | Unlawful Detainer-Commercial (31) | ☐ A6021 Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Residential (32) | ☐ A6020 Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2., 6. |
| | Unlawful Detainer-Drugs (38) | ☐ A6022 Unlawful Detainer-Drugs | 2., 6. |

| SHORT TITLE: Balul-Farina v. Lemire et al | CASE NUMBER |
|---|---|

| | A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| Judicial Review | Asset Forfeiture (05) | ☐ A6108 Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115 Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |
| | Writ of Mandate (02) | ☐ A6151 Writ - Administrative Mandamus<br>☐ A6152 Writ - Mandamus on Limited Court Case Matter<br>☐ A6153 Writ - Other Limited Court Case Review | 2., 8.<br>2.<br>2. |
| | Other Judicial Review (39) | ☐ A6150 Other Writ /Judicial Review | 2., 8. |
| Provisionally Complex Litigation | Antitrust/Trade Regulation (03) | ☐ A6003 Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007 Construction Defect | 1., 2., 3. |
| | Claims Involving Mass Tort (40) | ☐ A6006 Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035 Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort Environmental (30) | ☐ A6036 Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014 Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| Enforcement of Judgment | Enforcement of Judgment (20) | ☐ A6141 Sister State Judgment<br>☐ A6160 Abstract of Judgment<br>☐ A6107 Confession of Judgment (non-domestic relations)<br>☐ A6140 Administrative Agency Award (not unpaid taxes)<br>☐ A6114 Petition/Certificate for Entry of Judgment on Unpaid Tax<br>☐ A6112 Other Enforcement of Judgment Case | 2., 9.<br>2., 6.<br>2., 9.<br>2., 8.<br>2., 8.<br>2., 8., 9. |
| Miscellaneous Civil Complaints | RICO (27) | ☐ A6033 Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030 Declaratory Relief Only<br>☐ A6040 Injunctive Relief Only (not domestic/harassment)<br>☐ A6011 Other Commercial Complaint Case (non-tort/non-complex)<br>☐ A6000 Other Civil Complaint (non-tort/non-complex) | 1., 2., 8.<br>2., 8.<br>1., 2., 8.<br>1., 2., 8. |
| Miscellaneous Civil Petitions | Partnership Corporation Governance (21) | ☐ A6113 Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121 Civil Harassment<br>☐ A6123 Workplace Harassment<br>☐ A6124 Elder/Dependent Adult Abuse Case<br>☐ A6190 Election Contest<br>☐ A6110 Petition for Change of Name<br>☐ A6170 Petition for Relief from Late Claim Law<br>☐ A6100 Other Civil Petition | 2., 3., 9.<br>2., 3., 9.<br>2., 3., 9.<br>2.<br>2., 7.<br>2., 3., 4., 8.<br>2., 9. |

| SHORT TITLE | CASE NUMBER |
|---|---|
| Baiul-Farina v. Lemire et al | |

Item III. Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., Step 3 on Page 1, as the proper reason for filing in the court location you selected.

| REASON: Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected for this case. | | | ADDRESS: |
|---|---|---|---|
| ☐1. ☒2. ☐3. ☐4. ☐5. ☐6. ☐7. ☐8. ☐9. ☐10. | | | 111 N. Hill St |
| CITY: Los Angeles | STATE: CA | ZIP CODE: 90012 | |

Item IV. *Declaration of Assignment*: I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the Stanley Mosk courthouse in the Central District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., § 392 et seq., and Local Rule 2.0, subds. (b), (c) and (d)].

Dated: July 10, 2015

(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.
2. If filing a Complaint, a completed Summons form for issuance by the Clerk.
3. Civil Case Cover Sheet, Judicial Council form CM-010.
4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 03/11).
5. Payment in full of the filing fee, unless fees have been waived.
6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.
7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
NOTICE OF CASE ASSIGNMENT - UNLIMITED CIVIL CASE (NON-CLASS ACTION)

Case Number BC 5 8 7 8 4 2

**THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT**

Your case is assigned for all purposes to the judge indicated below. There is more information on the reverse side of this form.

| | ASSIGNED JUDGE | DEPT | ROOM | | ASSIGNED JUDGE | DEPT | ROOM | |
|---|---|---|---|---|---|---|---|---|
| | Hon. Kevin C. Brazile | 1 | 534 | | Hon. Elizabeth Allen White | 48 | 506 | |
| | Hon. Barbara A. Meiers | 12 | 636 | | Hon. Deirdre Hill | 49 | 509 | |
| | Hon. Terry A. Green | 14 | 300 | | Hon. John L. Segal | 50 | 508 | |
| | Hon. Richard Fruin | 15 | 307 | | Hon. Mitchell L. Beckloff | 51 | 511 | |
| | Hon. Rita Miller | 16 | 306 | | Hon. Susan Bryant-Deason | 52 | 510 | |
| | Hon. Richard E. Rico | 17 | 309 | | Hon. Steven J. Kleifield | 53 | 513 | |
| | Hon. Stephanie Bowick | 19 | 311 | | Hon. Ernest M. Hiroshige | 54 | 512 | |
| | Hon. Dalila Corral Lyons | 20 | 310 | | Hon. Malcolm H. Mackey | 55 | 515 | |
| | Hon. Robert L. Hess | 24 | 314 | | Hon. Michael Johnson | 56 | 514 | |
| | Hon. Yvette M. Palazuelos | 28 | 318 | | Hon. Rolf M. Treu | 58 | 516 | |
| | Hon. Barbara Scheper | 30 | 400 | | Hon. Gregory Keosian | 61 | 732 | |
| | Hon. Samantha Jessner | 31 | 407 | | Hon. Michael L. Stern | 62 | 600 | |
| | Hon. Mary H. Strobel | 32 | 406 | | Hon. Mark Mooney | 68 | 617 | |
| | Hon. Michael P. Linfield | 34 | 408 | | Hon. William F. Fahey | 69 | 621 | |
| | Hon. Gregory Alarcon | 36 | 410 | | Hon. Suzanne G. Bruguera | 71 | 729 | |
| | Hon. Marc Marmaro | 37 | 413 | | Hon. Ruth Ann Kwan | 72 | 731 | |
| | Hon. Maureen Duffy-Lewis | 38 | 412 | | Hon. Rafael Ongkeko | 73 | 733 | |
| | Hon. Elizabeth Feffer | 39 | 415 | | Hon. Teresa Sanchez-Gordon | 74 | 735 | X |
| | Hon. Michelle R. Rosenblatt | 40 | 414 | | Hon. Gail Ruderman Feuer | 78 | 730 | |
| | Hon. Holly E. Kendig | 42 | 416 | | | | | |
| | Hon. Mel Red Recana | 45 | 529 | | Hon. Emile H. Elias | 324 | CCW | |
| | Hon. Frederick C. Shaller | 46 | 500 | | *Provisionally Complex Non-class Action Cases Assignment is Pending Complex Determination | 324 | CCW | |
| | Hon. Debre K. Weintraub | 47 | 507 | | | | | |

***Complex**

All non-class action cases designated as provisionally complex are forwarded to the Supervising Judge of the Complex Litigation Program located in the Central Civil West Courthouse (600 S. Commonwealth Ave., Los Angeles 90005), for complex/non-complex determination pursuant to Local Rule 3.3(k). This procedure is for the purpose of assessing whether or not the case is complex within the meaning of California Rules of Court, rule 3.400. Depending on the outcome of that assessment, the case may be reassigned to one of the judges of the Complex Litigation Program or reassigned randomly to a court in the Central District.

Given to the Plaintiff/Cross-Complainant/Attorney of Record on ____________ SHERRI R. CARTER, Executive Officer/Clerk

SHERRI R. CARTER

By M. Soto, Deputy Clerk

# INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the Chapter Three Rules, as applicable in the Central District, are summarized for your assistance.

## APPLICATION

The Chapter Three Rules were effective January 1, 1994. They apply to all general civil cases.

## PRIORITY OVER OTHER RULES

The Chapter Three Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

## CHALLENGE TO ASSIGNED JUDGE

A challenge under Code of Civil Procedure section 170.6 must be made within 15 days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

## TIME STANDARDS

Cases assigned to the Individual Calendaring Court will be subject to processing under the following time standards:

**COMPLAINTS:** All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days of filing.

**CROSS-COMPLAINTS:** Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

A Status Conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

## FINAL STATUS CONFERENCE

The Court will require the parties at a status conference not more than 10 days before the trial to have timely filed and served all motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested jury instructions, and special jury instructions and special jury verdicts. These matters may be heard and resolved at this conference. At least 5 days before this conference, counsel must also have exchanged lists of exhibits and witnesses and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Eight of the Los Angeles Superior Court Rules.

## SANCTIONS

The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules. Such sanctions may be on a party or if appropriate on counsel for the party.

**This is not a complete delineation of the Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is absolutely imperative.**

## VOLUNTARY EFFICIENT LITIGATION STIPULATIONS

Superior Court of California
County of Los Angeles

Los Angeles County
Bar Association
Litigation Section

Los Angeles County
Bar Association Labor and
Employment Law Section

Consumer Attorneys
Association of Los Angeles

Southern California
Defense Counsel

Association of
Business Trial Lawyers

California Employment
Lawyers Association

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

**◆Los Angeles County Bar Association Litigation Section◆**

**◆ Los Angeles County Bar Association Labor and Employment Law Section◆**

**◆Consumer Attorneys Association of Los Angeles◆**

**◆Southern California Defense Counsel◆**

**◆Association of Business Trial Lawyers◆**

**◆California Employment Lawyers Association◆**

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.: FAX NO. (Optional): E-MAIL ADDRESS (Optional): ATTORNEY FOR (Name): | | |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES** | | |
| COURTHOUSE ADDRESS: | | |
| PLAINTIFF: | | |
| DEFENDANT: | | |
| **STIPULATION – DISCOVERY RESOLUTION** | | CASE NUMBER: |

**This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.**

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

   a. The party requesting the Informal Discovery Conference will:

      i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

      ii. Include a brief summary of the dispute and specify the relief requested; and

      iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

   b. Any Answer to a Request for Informal Discovery Conference must:

      i. Also be filed on the approved form (copy attached);

      ii. Include a brief summary of why the requested relief should be denied;

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

iii. Be filed within two (2) court days of receipt of the Request; and

iv. Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

c. No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

d. If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied. If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

e. If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4. If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5. The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6. Nothing herein will preclude any party from applying ex parte for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7. Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8. References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

| SHORT TITLE: | CASE NUMBER: |
| --- | --- |
| | |

**The following parties stipulate:**

Date:

(TYPE OR PRINT NAME) ➤ (ATTORNEY FOR PLAINTIFF)

Date:

(TYPE OR PRINT NAME) ➤ (ATTORNEY FOR DEFENDANT)

Date:

(TYPE OR PRINT NAME) ➤ (ATTORNEY FOR DEFENDANT)

Date:

(TYPE OR PRINT NAME) ➤ (ATTORNEY FOR DEFENDANT)

Date:

(TYPE OR PRINT NAME) ➤ (ATTORNEY FOR ____________)

Date:

(TYPE OR PRINT NAME) ➤ (ATTORNEY FOR ____________)

Date:

(TYPE OR PRINT NAME) ➤ (ATTORNEY FOR ____________)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.: FAX NO. (Optional): E-MAIL ADDRESS (Optional): ATTORNEY FOR (Name): | | |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES** | | |
| COURTHOUSE ADDRESS: | | |
| PLAINTIFF: | | |
| DEFENDANT: | | |
| **STIPULATION – EARLY ORGANIZATIONAL MEETING** | | CASE NUMBER: |

**This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.**

**The parties agree that:**

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following:*

   a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

   b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

   c. Exchange of names and contact information of witnesses;

   d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

   e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

   f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

   g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h. Computation of damages, including documents, not privileged or protected from disclosure, on which such computation is based;

i. Whether the case is suitable for the Expedited Jury Trial procedures (see information at www.lasuperiorcourt.org under "*Civil*" and then under "*General Information*").

2. The time for a defending party to respond to a complaint or cross-complaint will be extended to ________________ (INSERT DATE) for the complaint, and ________________ (INSERT DATE) for the cross-complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation. A copy of the General Order can be found at www.lasuperiorcourt.org under "*Civil*", click on "*General Information*", then click on "*Voluntary Efficient Litigation Stipulations*".

3. The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4. References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:

____________________ (TYPE OR PRINT NAME) ➤ ____________________ (ATTORNEY FOR PLAINTIFF)

Date:

____________________ (TYPE OR PRINT NAME) ➤ ____________________ (ATTORNEY FOR DEFENDANT)

Date:

____________________ (TYPE OR PRINT NAME) ➤ ____________________ (ATTORNEY FOR DEFENDANT)

Date:

____________________ (TYPE OR PRINT NAME) ➤ ____________________ (ATTORNEY FOR DEFENDANT)

Date:

____________________ (TYPE OR PRINT NAME) ➤ ____________________ (ATTORNEY FOR ____________)

Date:

____________________ (TYPE OR PRINT NAME) ➤ ____________________ (ATTORNEY FOR ____________)

Date:

____________________ (TYPE OR PRINT NAME) ➤ ____________________ (ATTORNEY FOR ____________)

NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp

TELEPHONE NO.: FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

**INFORMAL DISCOVERY CONFERENCE**
(pursuant to the Discovery Resolution Stipulation of the parties)

CASE NUMBER:

1. This document relates to:
   - ☐ Request for Informal Discovery Conference
   - ☐ Answer to Request for Informal Discovery Conference
2. Deadline for Court to decide on Request: _______________ (insert date 10 calendar days following filing of the Request).
3. Deadline for Court to hold Informal Discovery Conference: _______________ (insert date 20 calendar days following filing of the Request).
4. **For a Request for Informal Discovery Conference, briefly describe the nature of the discovery dispute, including the facts and legal arguments at issue. For an Answer to Request for Informal Discovery Conference, briefly describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.**

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
| --- | --- | --- |
| TELEPHONE NO.: FAX NO. (Optional): E-MAIL ADDRESS (Optional): ATTORNEY FOR (Name): | | |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES** | | |
| COURTHOUSE ADDRESS: | | |
| PLAINTIFF: | | |
| DEFENDANT: | | |
| **STIPULATION AND ORDER – MOTIONS IN LIMINE** | | CASE NUMBER: |

**This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.**

**The parties agree that:**

1. At least ____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

| SHORT TITLE: | CASE NUMBER: |
| --- | --- |
| | |

**The following parties stipulate:**

Date:

(TYPE OR PRINT NAME) ➤ (ATTORNEY FOR PLAINTIFF)

Date:

(TYPE OR PRINT NAME) ➤ (ATTORNEY FOR DEFENDANT)

Date:

(TYPE OR PRINT NAME) ➤ (ATTORNEY FOR DEFENDANT)

Date:

(TYPE OR PRINT NAME) ➤ (ATTORNEY FOR DEFENDANT)

Date:

(TYPE OR PRINT NAME) ➤ (ATTORNEY FOR ______________)

Date:

(TYPE OR PRINT NAME) ➤ (ATTORNEY FOR ______________)

Date:

(TYPE OR PRINT NAME) ➤ (ATTORNEY FOR ______________)

**THE COURT SO ORDERS.**

Date: ______________________

JUDICIAL OFFICER

## PROOF OF SERVICE

I am employed in the City and County of Los Angeles, California. I am over the age of 18 and not a party to the within action. My business address is 725 South Figueroa Street, 38th Floor, Los Angeles, CA 90017.

On **September 18, 2015**, I served the following document(s) described as:

**NOTICE OF REMOVAL; CIVIL COVER SHEET**

on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes addressed as follows:

| Attorney | Telephone/ Facsimile/Email | Party |
|---|---|---|
| PETER M. HOFFMAN<br>8439 Sunset Blvd., Suite 101<br>Los Angeles, CA 90069 | Telephone: 323.372.3080<br>Facsimile: 323.389.0664<br>email:<br>phoffman@7artspictures.com | *Attorneys for OKSANA BAIUL-FARINA* |

☐ (MAIL) I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this firm's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at Los Angeles, California.

☒ (OVERNIGHT DELIVERY) I deposited in a box or other facility regularly maintained by an express service carrier, or delivered to a courier or driver authorized by said express service carrier to receive documents, a true copy of the foregoing document in sealed envelopes or packages designated by the express service carrier, addressed as stated above, with fees for overnight delivery paid or provided for.

☐ (MESSENGER SERVICE) I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed and provided them to a professional messenger service for service. A separate Personal Proof of Service provided by the professional messenger service will be filed under separate cover.

☐ (PERSONAL/MESSENGER SERVICE) Delivery was made to the attorney or at the attorney's office by serving the documents in an envelope or package clearly addressed and identifying the attorney at the addresses listed above and/or by leaving with a receptionist or an individual in charge of the office.

☐ (FACSIMILE) Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached.

AKERMAN LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

AKERMAN LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

☐ (E-MAIL or ELECTRONIC TRANSMISSION) Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐ (CM/ECF Electronic Filing) I caused the above document(s) to be transmitted to the office(s) of the addressee(s) listed above by electronic mail at the e-mail address(es) set forth above pursuant to Fed.R.Civ.P.5(d)(1). "A Notice of Electronic Filing (NEF) is generated automatically by the ECF system upon completion of an electronic filing. The NEF, when e-mailed to the e-mail address of record in the case, shall constitute the proof of service as required by Fed.R.Civ.P.5(d)(1). A copy of the NEF shall be attached to any document served in the traditional manner upon any party appearing pro se."

I declare under penalty of perjury that I am employed in the office of a member of the bar of this Court at whose direction this service was made and that the foregoing is true and correct.

☐ (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☒ (Federal) I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on **September 18, 2015**, at Los Angeles, California.

| | |
|---|---|
| Helen E. Serrano | Helen E. Serrano |
| (Type or print name) | (Signature) |